IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

DENNIS W. THOMPSON,

      Petitioner,

Vs.               No.  10-3242-SAC

DAVID MCKUNE, et al.,

      Respondents.

MEMORANDUM AND ORDER

  This matter comes before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Dk. 1).  The petitioner challenges his Drug Severity Level 1 sentence for his manufacturing methamphetamine conviction as having been imposed in violation of his rights under the Sixth and Fourteenth Amendments.  Specifically, he denies that the jury's verdict constitutes a sufficient legal finding that the offense of manufacturing methamphetamine was committed on or after May 20, 2004, and he further denies that the record contains sufficient evidence for a finding of harmless error.

**BACKGROUND**

  The parties are not in dispute over the procedural and factual history to this case as reflected in the two published Kansas Supreme Court

decisions,[1] the one published Kansas Court of Appeals decision,[2] and the two unpublished Kansas Court of Appeals decisions[3] and as relevant to the sentencing issue raised in this § 2254 proceeding. The following summary of the procedural history provides a context for this order, and the more detailed factual history addresses the matters relevant to the sentencing issue.

*Relevant Procedural History*

After a trial in the District Court of McPherson County, Kansas, the jury found Dennis Thompson guilty on all charges, namely: manufacture of methamphetamine in violation of K.S.A. § 65-4159, a severity level 1 drug felony; possession of pseudoephedrine as a precursor to an illegal drug in violation of K.S.A. § 65-7006(a), a severity level 1 drug felony; possession of lithium metal as a precursor to an illegal drug in violation of K.S.A. § 65-7006(a), a severity level 1 drug felony; possession of methamphetamine in violation of K.S.A. § 65-4160, a severity level 4 drug felony; possession of drug manufacture paraphernalia in violation of K.S.A. § 65-4152(a)(3), a severity level 4 drug felony; possession of marijuana in violation of K.S.A. § 65-4162, a class A misdemeanor; and possession of

---

[1] *State v. Thompson*, 284 Kan. 763, 166 P.3d 1015 (2007), and *State v. Thompson*, 287 Kan. 238, 200 P.3d 22 (2008).
[2] *State v. Thompson*, 36 Kan. App. 2d 252, 138 P.3d 398 (2006), *rev'd* 284 Kan. 763, 166 P.3d 1015 (2007).
[3] *State v. Thompson*, 2008WL 142103 (Kan. App. Jan. 11, 2008), *aff'd in part and rev'd in part*, 287 Kan. 238, 200 P.3d 22 (2009); *State v. Thompson*, 2009 WL 764503 (Kan. App. Feb. 27, 2009), *rev. denied*, 289 Kan. Adv. Sh. No. 4 p. VIII (Kan. Nov. 6, 2009).

drug use paraphernalia in violation of K.S.A. § 65-4152, a class A misdemeanor. The district court sentenced Thompson to 158 months of incarceration.

Thompson appealed advancing six issues. On July 21, 2006, the Kansas Court of Appeals reversed and remanded the case finding sufficient evidence to sustain a conviction for manufacturing methamphetamine but concluding that the district court erred in not granting the motion to suppress the evidence. *State v. Thompson*, 36 Kan. App. 2d 252, 138 P.3d 398 (2006). Granting the State's petition to review the suppression ruling and denying Thompson's petition to review the sufficiency of the evidence ruling, the Kansas Supreme Court reversed the judgment of the Kansas Court of Appeals on the suppression issue and remanded the case for consideration of the remaining issues. *State v. Thompson*, 284 Kan. 763, 771, 813, 166 P.3d 1015 (2007).

On remand, the Court of Appeals rejected Thompson's challenges on the sufficiency of the evidence and evidentiary rulings but reversed the conviction for possession of lithium metal as a precursor in violation of K.S.A. § 65-7006 as multiplicitous with his conviction for possession of pseudoephedrine as a precursor in violation of K.S.A. § 65-7006. *State v.* Thompson, 174 P.3d 458, 2008 WL 142103 at *5 (2008). Using the identical offense sentencing doctrine, the Court of Appeals also reversed the severity level 1 sentences for possession of pseudoephedrine

3

and the manufacture of methamphetamine and remanded for new sentences as severity level 4 drug felonies. *Id.* at *6. The Kansas Supreme Court granted the State's petition to review the multiplicity and sentencing issues and denied the Thompson's petition to review. *State v. Thompson*, 287 Kan. 238, 242, 200 P.3d 22 (2009). The Kansas Supreme Court affirmed the rulings on the multiplicity issue and on the identical offense sentencing doctrine as applied to the possession of pseudoephedrine conviction, but it reversed the lower court's use of that doctrine on the manufacture of methamphetamine conviction. This reversal resulted in the manufacturing conviction staying at a severity level 1, so the Court remanded with the following explanation:

> Because the Court of Appeals determined Thompson should have received a lesser, severity level 4 drug felony sentence for his conviction of manufacture of methamphetamine, it did not address his alternative argument that he should have been sentenced using a level 3 drug severity under the holding of *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 (2004). To construct this argument, Thompson suggests in this brief that the State failed to prove and the jury was not instructed to find that the manufacture occurred on or after May 20, 2004, the effective date of legislative amendments which reverse the effect of the *McAdam* holding and make the offense of manufacture of methamphetamine a severity level 1 drug felony. See L. 2004, ch. 125, sec. 1. The case is remanded to the Court of Appeals to consider those alternative issues raised by Thompson.

287 Kan. at 261.

On remand for the second time, the Kansas Court of Appeals addressed Thompson's remaining sixth issue. The Court of Appeals found sufficient evidence such "that a rational fact finder could have found beyond

a reasonable doubt that Thompson manufactured methamphetamine 'on or about May 26, 2004.'" *State v. Thompson*, 2009 WL 764503 at *2 (Kan. App. Feb. 27, 2009). The panel also concluded that the failure to instruct the jury for a finding on whether the manufacturing offense occurred on or after May 20, 2004, was not clear error as there is no real possibility that the jury would have reached a different verdict if instructed with the phrase "on or after May 20, 2004." *Id*. The Kansas Supreme Court denied Thompson's petition to review this order. *State v. Thompson*, 2009 WL 764503 (Kan. App. Feb. 27, 2009), *rev. denied*, 289 Kan. Adv. Sh. No. 4 p. VIII (Kan. Nov. 6, 2009).

*Relevant Factual History*

During a consensual search of Thompson's vehicle following a traffic stop, officers found "assorted drug paraphernalia and a baggie containing powder residue," 284 Kan. at 769, that was later determined to be "finished methamphetamine in powder form." 36 Kan. App. 2d at 254. Thompson subsequently consented to a search of his garage which yielded "numerous items of manufacturing paraphernalia." 284 Kan. at 769.

The officers testified that in the car they found one Crown Royal bag containing "pseudoephedrine tablets" and "lithium batteries" both of which are ingredients used in the manufacture of methamphetamine. (Rec. III, pp. 75-76). In the glove box, officers found a small plastic baggie containing a powder that resembled methamphetamine. *Id.* at 79-81.

Testing showed this residue to be methamphetamine.   (Rec. IV, p. 97). They found a gray plastic container with numerous syringes, rolling papers, cotton swabs, and spoons with powder residue.  *Id.* at 82.  Some of the syringes contained liquid.  *Id.*  Testing of the liquid residue showed it be methamphetamine and to have residues consistent with the Nazi cooking method.  (Rec. IV, pp. 95-96).  Thompson told officers that these items found in his car had come from his garage.  (Rec. III, p. 87).

At trial, testimony was presented on the necessary ingredients and steps for manufacturing methamphetamine using the Nazi cooking method.  (Rec. III, pp. 99-111).  In the consensual search of the Thompson's garage, officers found an electronic scale that is used to weigh small amounts such as those involved in the trafficking of drugs.  (Rec. III, pp. 113-14).  There was a Mason jar containing a layered liquid that one typically would see with the manufacture of methamphetamine.  *Id*. at 115. Testing of the top layer showed it to be a petroleum distillate and the bottom layer was water.  (Rec. IV, p. 86).  This layering of liquids is "commonly encountered in the extraction phases" of methamphetamine production.  *Id*. at 88.  There was a bottle of isopropyl rubbing alcohol that is used "to soak down [pseudoephedrine] pills."  (Rec. III, p. 117).  Officers also found evidence of anhydrous ammonia in a small green coffee thermos.  *Id.* at 119-21.  The amount was "very minute," but this was not a pressurized container so the anhydrous ammonia would not be expected to remain in the

container very long, weeks at the most. *Id.* at 121-22, 157. This amount in the container would be consistent with past use and evaporation or with recent use followed by the dumping and washing of the container. *Id.* at 159. Other than this trace, officers found no other evidence of anhydrous ammonia in the garage. *Id.* at 160. Detective Hawkinson observed that in investigating active lab sites they do not normally find anhydrous ammonia sitting around but they will find evidence of its presence. *Id.* at 186-87. Also in the garage, there was a device that would work as a gassing generator in the production of methamphetamine. *Id.* at 122. It was an Aquafina bottle with white sludge in the bottom. *Id.* at 122-23. The officers also found a one-gallon jug of muriatic acid that would be used to produce the hydrogen chloride gas. *Id.* at 126. Testifying from his training and experience in investigating methamphetamine laboratories, Detective Hawkinson opined that the defendant's garage contained "an active methamphetamine laboratory." *Id.* at 132-33. Detective Hawkinson agreed "active" means the "cooking is going on or they're manufacturing right there" or that "a chemical reaction is going on." *Id.* at 160-61.

## STANDARD OF REVIEW

This proceeding is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") which imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. ––––,

130 S.Ct. 1855, 1862 (2010) (citation and internal quotation marks omitted).  When a state prisoner seeks federal habeas relief on a "claim that was adjudicated on the merits in State court proceedings," the federal court under AEDPA may grant relief only if the state court adjudication resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to clearly established Federal law" when:  (a) the state court "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases'"; or (b) "'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"  *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000)), *cert. denied*, 549 U.S. 1285 (2007).

A state court decision involves an unreasonable application of clearly established federal law where it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts.  *Id*. at 407–08.  Likewise, a state court unreasonably applies federal law, as determined by the Supreme Court, where it either unreasonably extends, or

8

refuses to extend, a legal principle from Supreme Court precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008), *cert. denied*, 555 U.S. 1187 (2009). In order to obtain relief, a petitioner must show that "'the state court's application of clearly established federal law was objectively unreasonable.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. at 409. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard v. Boone*, 468 F.3d at 671.

**DISCUSSION**

In June of 2000, the United States Supreme Court held that any fact increasing the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). "Since *Apprendi*, the Supreme Court has repeatedly held that under the Sixth Amendment, any fact that exposes a defendant to a sentence greater than the statutory maximum must be found by a jury, not a judge, and be proved beyond a reasonable doubt, not by a preponderance of the evidence." *United States v. Hill*, 539 F.3d 1213, 1215 (10th Cir. 2008).

9

Because the jury was not specifically asked to find whether he had manufactured methamphetamine "on or after May 20, 2004," Thompson argues he was denied a jury determination on a fact that increased the severity level of his sentence. He argues his sentence is both contrary to *Apprendi* and an unreasonable application of the law clearly established in it. The date of May 20, 2004, is significant in that this was the effective date of legislation that reversed the effect of the Kansas Supreme Court's decision in *State v. McAdam*, 277 Kan. 136, 144-47, 83 P.3d 161 (2004), that had held a sentence for violating K.S.A. 65-4159(a) was subject to the lesser drug severity level 3 penalty provision of K.S.A. 65-4161(a). Thus, Thompson argues that for his manufacturing conviction under K.S.A. 65-4159(a) to be a drug severity level 1 penalty, the government must have proved and the jury must have found that he committed the offense on or after May 20, 2004.

The jury was instructed on the manufacturing offense that to find Thompson guilty it must be proved that the "act occurred on or about the 26th day of May, 2004, in McPherson County, Kansas." (Rec. I, p. 71). The Kansas Court of Appeals framed the issue as whether Thompson manufactured before or after May 20, 2004, and then stated Thompson's challenge as with the state's failure to prove he manufactured on or after May 20, 2004. On this first argument, the Court of Appeals concluded:

> We view Thompson's argument as a challenge to the sufficiency of the evidence, so our standard of review is whether, after review of all of

> the evidence viewed in the light most favorable to the State, we are convinced that a rational fact finder could have found the defendant guilty beyond a reasonable doubt. *State v. Beach*, 275 Kan. 603, syl. ¶ 2, 67 P.3d 121 (2003).
>
> The record reflects that there was evidence the defendant had possession of finished methamphetamine upon his arrest May 26, 2004. Moreover, he admitted he had manufactured methamphetamine in the past and was a frequent user of the substance. Most importantly, however, is the testimony of the officer who conducted a search of Thompson's garage on May 26, 2004. He confirmed that on that date "there was an active methamphetamine laboratory" in the garage. He later defined "active" as meaning that "the cooking is going on or they're manufacturing right there."
>
> Viewing this evidence in the light most favorable to the State we are convinced that a rational fact finder could have found beyond a reasonable doubt that Thompson manufactured methamphetamine "on or about May 26, 2004." His challenge to the sufficiency of the evidence on this element of the crime must be rejected.

2009 WL 764503 at *1-*2.

The Court of Appeals understood Thompson to be arguing in the alternative that the trial court erred in failing to instruct the jury to determine whether the manufacturing occurred on or after May 20, 2004. Because Thompson at trial did not object to the absence of this instruction, the panel applied a clearly erroneous standard that foreclosed it from disturbing the verdict unless "firmly convinced there is a real possibility the jury would have rendered a different verdict if the alleged instruction error had not occurred." *Id.* at 2 (citation omitted). Looking at the jury instruction given on the elements of the manufacturing offense, the panel concluded:

> Given the benefit of hindsight, justice might have been better served if the phrase "or about" had been deleted under these circumstances. Nevertheless, applying our standard of review, we are firmly convinced

11

> that the exclusion of the commonly used phrase "on or about" does not create any real possibility that the jury would have reach a different verdict. Moreover, we are firmly convinced that any failure to use the phrase "on or after May 20, 2004" similarly does not create any such possibility for a different verdict. Again, the clear evidence that Thompson had an "active" methamphetamine laboratory in his garage on May 26, 2004, does not leave us any room to think that there was likely any issue in the juror's minds about the date of offense. It may seem unfair that a mere 6 days in the commission of this offense could change its severity level from a level 1 felony to a level 3 felony, but we are bound by controlling precedent, clear legislative amendment and effective date, and our limited standard of review.
>     There was no clear error in sentencing Thompson for manufacturing methamphetamine, a level 1 offense on the date he committed this offense.

2009 WL 764503 at *2-*3.

The petitioner now summarily contends this instruction and the jury's verdict of guilty on the manufacturing offense depends on "this ambiguous description of the manufacture date [that] could reasonably include manufacturing concluded prior to May 20, 2004." (Dk. 2, p. 13). The petitioner proposes that the Kansas Court of Appeals could only affirm his sentence by engaging in its own fact-finding that he manufactured methamphetamine on May 26, 2004, and that this judicial fact-finding offends *Apprendi*. Finally, based on Kansas Court of Appeals' failure to mention or discuss *Apprendi* in its decision, the petitioner assumes the appellate panel also failed to recognize his constitutional rights preserved in *Apprendi*.

The court rejects the petitioner's proposition that the Kansas Court of Appeals engaged in any independent fact-finding as to when

Thompson committed the offense. Instead, the panel accepted the jury's verdict that the offense occurred on May 26, 2004, and rejected any argument for believing the jury would have reached a different verdict if "on or about" had been deleted or if the date of May 20, 2004, had been used. The Court understood Thompson's arguments to be a challenge to the sufficiency of evidence to prove the offense occurred after May 20, 2004, **or** on or about May 26, 2004. The jury was instructed that the offense had to have "occurred on or about May 26, 2004," but it was given no further instructions as to the meaning of "on or about." (Rec. I, p. 71). The Court highlighted the evidence of manufacturing activities found on May 26, 2004, in the search of Thompson's vehicle and garage, Thompson's admissions of manufacturing and frequent use, and the officer's testimony of an "active methamphetamine laboratory" on May 26, 2004. The Court was "firmly convinced" that if "on or about" had been deleted from the jury instruction, there was no "real possibility that the jury would have reached a different verdict." 2009 WL 764503 at *2. In the same way, the Court was "firmly convinced" that if "on or after May 20, 2004," had been used in the instruction, there was no possibility of a different verdict. *Id*. "[T]he clear evidence that Thompson had an 'active' methamphetamine laboratory in his garage on May 26, 2004, does not leave us any room to think that there was likely any issue in the juror's minds about the date of the offense." *Id*. Thus, the Court of Appeals denied Thompson all relief on the issue as stated

13

by the court to be: "Did the State Fail to Prove that Any Manufacture of Methamphetamine by Thompson Occurred After May 20, 2004, thus Requiring Resentencing under *McAdam*?" 2009 WL 764503 at *1-*2. The Court likewise held there was "no clear error in sentencing Thompson for manufacturing methamphetamine, a level 1 offense on the date he committed this offense." *Id.* at *3. In short, the Court held that the sentencing court properly relied on the jury's verdict as a finding beyond a reasonable doubt that the manufacturing offense occurred on May 26, 2004, **or** after May 20, 2004, and that the alleged instruction error in using "on or about" created no real possibility of a different jury verdict if cured.

The Court of Appeals' decision is not contrary to clearly established Federal law nor involves the unreasonable application of such law. Consistent with *Apprendi* and subsequent precedent, the Court of Appeals found that the sentencing court correctly relied on the jury's verdict as establishing the offense occurred on May 26, 2006, or after May 20, 2004. The Court of Appeals likewise rejected Thompson's arguments that the state had not proved the offense to have occurred after May 20th or that the instructions created unreliable and reversible ambiguity in the jury's verdict as to the date of the offense. These rulings are not objectively unreasonable. The petitioner has failed to show how *Apprendi* is contradicted by or unreasonably applied in these holdings.

Even assuming the petitioner could fashion an arguable violation of *Apprendi*, the court would find this error to be harmless. As the Kansas Court of Appeals held, "the clear evidence that Thompson had an 'active' methamphetamine laboratory in his garage on May 26, 2004, does not leave us any room to think that there was likely any issue in the juror's minds about the date of offense." 2009 WL 764503 at *2. The petitioner argues against this clear and overwhelming evidence by pointing to the trace of anhydrous ammonia found in the defendant's garage on May 26, 2004, and concluding that this amount of ammonia would have been insufficient to manufacture methamphetamine. But this argument is of little avail, for the Kansas Court of Appeals earlier upheld the manufacturing conviction even after recognizing that "all of the ingredients and equipment necessary to manufacture methamphetamine using the Nazi method were found in Thompson's car and garage except anhydrous ammonia." 2008 WL 142103 at *2. Moreover, the evidence at trial showed that officers investigating active lab sites normally do not find anhydrous ammonia sitting around but do find evidence of its presence as in this case. And there was testimony that the small amounts of anhydrous ammonia found in the container would be consistent with past use and evaporation or with recent use followed by the dumping and washing of the container. The court rejects the petitioner's proposition that a finding or opinion evidence of an existing "active methamphetamine laboratory" depends on evidence that a sufficient

manufacturing quantity of anhydrous ammonia is also present.  Not only is this proposition not supported by the evidence in this case, but also the petitioner cites no binding Kansas case law in support of it.

None of the state court proceedings in question produced a decision that was contrary to or involved the unreasonable application of clearly established federal law or a decision that was based on an unreasonable determination of the facts in light of the evidentiary record. For these reasons, the court denies the petitioner's request for habeas corpus relief, that is, to have his sentence vacated and his case remanded for resentencing on the lower drug severity level.

IT IS THEREFORE ORDERED that Thompson's petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody (Dk. 1) is denied.

Dated this 15th day of August, 2012, Topeka, Kansas.

<u>s/ Sam A. Crow</u>
Sam A. Crow, U.S. District Senior Judge